Harper, Chancellor.
The first question was as to the estate that Elizabeth Pepin and her children took in the premises, after the death of the donor, Collas. The gift is to her and her present and future issue by her said husband. If these words had stood alone, I should have thought that the word issue was one of limitation, and that they created a fee simple, conditional. For though in Wild’s case, 6 R. 17, it is said that a gift to one and his issue or children, who has issue or children living (as Elizabeth Pepin had in this case,) creates a joint tenancy, yet Lord Hardwick observes, in the case of Lumpley &• Blower, 3 Atk. 397, “that was before it was fully settled that the word issue was as proper a word of limitation as heirs of the body.” Still, however, the word issue may be explained to be a word of purchase ; and it is fully so in this case, by the direction which follows — to divide the money in the event of a sale of the premises, between the mother and her children, uhave and share alike, to them, their heirs and assigns.” I have no doubt, therefore, that Elizabeth Pepin and her children, living at the death of Collas, took a fee, jointly, or rather in common.
The principal question, however, was, whether the legal estate in the premises is now executed in Elizabeth Pepin and her children, or whether it still subsists in the trustee. If it still subsists in the trustee, the conveyance must be made through him.
*470 It was not doubted, and could not be, that the legal estate remained in the trustee during the life of the grantor, Collas, and during the coverture of Elizabeth Pepin ; at least as to her interest in the premises. This was necessary for ejffecting the objects of the trust; the managing of the estate, so as to receive a specific sum, to be paid over to the grantor annually, and to secure the separate use to a feme covert, free from the debts or control of the husband.
An impression seemed to be entertained in the argument of the case, that though the legal estate were executed in fee, in the trustees, yet when the objects of the trust were accomplished, the fee might shift and become executed in the cestuique use. This idea does not seem to be warranted by any authority. According to the objects of the trust and the terms of the conveyance, trustees have been construed to take only a chattel interest — as in the case of a devise to executors for or until the payment of debts; Co. Lit. 42, a ; Matthew Manning's case, 6 Rep. 96 ; Hilchins vs. Hilchins, 2 Vern. 403; and Carter vs. Barnardiston, 1 Pr. Wms. 505; or a life estate, as in some of the cases which will be hereafter referred to, But if the fee be once vested in the trustees, the inheritance remains in them ; unless perhaps a shifting use should be created, by the terms of the deed or will.
It is agreed that some legal estate was executed in the trustees in this instance, and the question is, what that estate was. It is supposed to have been for the life of Col-las and the coverture of Elizabeth Pepin, which would have been a life estate, determinable. Co. Lit. 42, a. I am of opinion that the fee was executed in the trustee, and remains in him.
It is to be observed that the conveyance is to the trustee, his heirs and assigns, which would seem to import a fee. The cases on the subject are numerous and various. So far as I can deduce any rule from them, it seems to be to the following effect: that if the gift to the trustee be general, without words of limitation or inheritance, he will be construed to take a chattel interest, a life estate, or a fee, as *471 the purposes of the trust appear to require.* But if it be to him and his heirs, (provided any estate at all is executed in the trustee,) this imports a fee ; though these words may be restrained by other circumstances in the deed or will, which shew that the donor or devisor contemplated that the estate should be executed in some subsequent taker, or after some event, or which are inconsistent with the notion of the fee’s continuing in the trustee. Thus, there may be a devise to a trustee and his heirs, expressly during the life of A. or for the separate use of a feme covert during life, with a direct devise of the legal estate in remainder. What I mean to express, will be best illustrated by reference to the cases.
In Wright vs. Pearson, Amb. 360, the devise was to trustees and their heirs, to raise money for legacies, and subject thereto, to a nephew for life, with remainder, tfec. It was contended that this gave the trustees only a chattel interest. The Lord Keeper says, “the cases do not apply to the present. Trustees take a chattel interest, only where the interest is uncertain. Here, the limitation is to them and their heirs, therefore they take a fee.” In Bagshaw and Spencer, 2 Atk. 578, 1 Ves. 144, Lord Hardwicke says, “the devise is to trustees and their heirs, which carries the whole fee in law.”
In Gibson vs. Rogers, Amb. 94, reported as Gibson vs. Montfort, 1 Ves. 485, the devise was of real and personal estate, to trustees, their executors, administrators and assigns, in trust to pay legacies and annuities out of the personal estate, and the rents and profits of the real estate, and after payment of these, the testator devised the residue. The Chancellor held that the words executors and administrators applied to the personal estate, and “assigns,” to the real and carried the fee. He decides, moreover, that the devise for payment, out of the rents and profits, involves *472 the power of selling, and therefore necessarily implies a fee.
In Chapman vs. Blisset, Ca. Temp. Talbot, 145, the devise was to trustees, their heirs, executors and administrators, to-pay an annuity to the testator’s son for life, and after his death, testator devised one moiety of the estate to the children of the son, and the other moiety to the children of a grandson. There was a provision for a fortune for the son’s wife, and direction to pay an annuity to the grandson till 15, and an apprentice fee. It was held that the fee was executed in the trustees. The argument of the Chancellor does not seem to rely merely on the limitation to heirs, but is not inconsistent with the cases before quoted. He says, “Where particular things are to be done by the trustees, as in this case the several payments that are to be made to the several persons, it is necessary that the estate should remain in them, so long at least as those purposes require.” No authority has been cited to warrant the doctrine that in case of such a general limitation to trustees as the present case is, that they should have but a particular interest, and then that interest to determine. In a note in the case, p. 150, the authorities are referred to, to shew that trustees have a fee without words of limitation, when the purposes of the trust require it, and the intention of the testator cannot be otherwise effectuated.
In Venables vs. Morris, 7 T. R. 342, 434, an estate was limited to husband for life ; remainder during his life, to trustees and their heirs, for preserving contingent remainders ; remainder to the wife for life ; remainder to trustees and their heirs, (not during her life,) for preserving contingent remainders; remainder, <&c. The wife survived. Here there was ground to contend, that the trustees were only intended to support contingent remainders during the life of the wife, yet the Judges certified that the fee was executed in them.
In Hartón vs. Hartón, 7 T. R. 648, the devise was to trustees and their heirs, to the separate use of a feme covert during life ; after her death, to first and other sons, &c. Held a fee executed in trustees.
*473 Several of the cases cited, seem hardly reconcilable with the case of Jones vs. Say & Sele, 1 Eq. C. Ab. 383, eaid to be better reported, 8 Vern. Ab. 262, and quoted, Fearne’s Con. Rem. 52. In that case, testatrix devised estates to trustees, and their heirs, in trust, to buy legacies and annuities, and the surplus of rents and profits to the separate use of a married daughter for life ; and after the daughter’s death, to stand seized of the premises, to the úse of the heirs of the body of the daughter, &c. It was held that the estate subsisted in the trustees during the life of the daughter, and that the use was executed in the heirs of her body, on her death. On this case Lord Kenyon remarks, in Hartón and Hartón, “ that it is a case by itself,” and, indeed, seems to overrule it. And Mr. Butler, in his note to Fearne, 54, (a) observes, “ in practice, certainly, no reliance can be placed on it, as an authority for confining the estate of trustees, under such a devise, to the life of the tenant for life.” The case of Shapland vs. Smith, I Br. C. C. seems to me to come nearer than any other, to supporting Jones vs. Say & Sele. There the devise was to trustees, (generally) in trust, that they and their heirs and assigns, should, after deducting taxes, (fee. pay the surplus to C. S. and his assigns, during life ; and from and after his decease, to the use and behoof of the heirs male of the body of the sajd C. S. The question chiefly made in the case, was, whether the use was executed in C. S. during his life, and consequently, whether he took an estate tail, under the rule in Shelly's case. Chief Baron Eyre was of opinion that the estate was executed in C. S., but the Chancellor differed from that opinion, and held that the estate was in the trustees for the life of C. S. that the remainder was legally executed in his heirs male, and consequently, that the legal estate could not unite with the equitable, to make an estate tail. This case may have been decided under an impression that the devise to trustees was indefinite, (not to heirs,') or that the devise to the use and behoof of the heirs male of C. S. expresses an intention that the use should be executed in them.
In Sylvester vs. Wilson, 2 T. R. 444, the devise was to *474 trustees and their heirs; but expressly during the life of testator’s son, to apply profits, (fee. and immediately from and after his decease, testator devised the said premises, expressing the intention that the estate should be executed in the heirs of the body.
But there are cases of devises and conveyances to trustees and their heirs, not expressed to be for the life of the cestui que trust, for life, where that construction has been put on the words, from circumstances' in the will or conveyance, shewing that intention in the donor or devisor. As in Doe vs. Hicks, 7 T. R. 429, where testator devised to J. C, for life, remainder to trustees and their heirs, to preserve contingent remainders ; remainder to first and other sons ; and in default of such issue, to A. C. for life, remainder to the said trustees and their heirs, to preserve, (fee. with several other life estates, and like remainders to the trustees. Lord Kenyon thought, from the whole of the will, that the intention of the testator' was to give to the trustees and their heirs, only during the lives of the several tenants for life. If they took the whole fee by the first devise, all the subsequent remainders to them were absolutely nugatory. He observes, that in Veneables and Morris, “ it was absolutely necessary that the fee should be in the trustees ; for the tenant for life, (the wife) had a power of appointment — and if, in exercising that power, she had introduced any contingent remainders, they might all have been defeated, if the uses were not executed in the trustees. On the same principle, therefore, that it was necessary-in that case that the trustees should have the legal estate, to answer the intention of the parties, I think it is not necessary in this case, that they should take the legal estate for a longer term than during the lives of the tenants for life — since this construction will best answer the intention of this testator.
So in Curtis vs. Price, 12 Ves. 89, which was decided principally on the authority of Doe and Hicks. That was a case of conveyance to trustees and their heirs, in trust for the husband for life, then for the wife for life, if she continued unmarried ; but if she should marry, to pay her an annuity, and provide for the education of her children ; *475 and after the death of the husband and wife, to the said trustees, executors, <fec. for a term of one hundred years, to raise portions for younger children. In this case, the gift to the trustees and their heirs, was construed to be during the life of the wife. The Master of Rolls decided on two grounds; first, that there was a purpose to be answered in giving the trustees an estate for the life of the wife, (to pay the annuity and educate children, in the event of her marriage,) and none to be answered by giving them a larger estate ; and secondly, that giving the trustees a term, after the death of the husband and wife, was incompatible with the supposition of their having before taken a fee. I would observe on the first ground, that from the whole current of authorities, it does not appear that it would have been sufficient alone, to restrict the estate of the trustees. It is not enough that the purposes of the trust have been satisfied during a particular estate, or that no object is to be effected by giving them a larger estate ; if the gift be to them and their heirs, there must be something positive to restrict them to a particular estate, or inconsistent with the notion of their taking a fee, as in the two last cited cases.
The case of Doe, exdem. White vs. Simpson, 5 East, 162, was one of a devise to trustees, and the survivor of them, and the executors and administrators of such survivor. There the trustees were construed to take an estate for the life of two annuitants, and a further term, until the sum of £800 should be raised.
In this case, the conveyance was to the trustee and his heirs ; the estate certainly subsisted in the trustee during the life ofiCollas and the coverture of Mrs. Pepin, and there is nothing to restrict the estate of the trustees, or incompatible with their taking a fee. I have not hitherto adverted to the authority given to the trustee to sell. Even if the conveyance had not been to the trustee and his heirs, this would have put the matter out of doubt. It occurred to me at first, that if, on the other grounds, the trustee appeared to have only a particular estate, this might be a mere power annexed to his estate, and gone when the estate terminated. But a very little examination was suffi *476 cient to show the fallacy of this impression. In Gibson vs. Rogers, Lord Hardwieke thought the possibility that the executors might be under the necessity of selling the estate, sufficient to imply a fee in them. The trustees must have as large an estate as they are to convey. In Keene vs. Deardon, 8 East, 248, an estate was conveyed to trustees and their heirs, in trust to sell, with the consent of the parties conveying, and vest the proceeds in other lands, to be settled in the manner specified; and until such sale, the rents and profits to be received by the party entitled, if no such conveyance had been made. As the trustees were only to sell with the consent of the grantors, and as, until sale effected, the party previously entitled was to receive the rents and profits, it was contended that this amounted to nothing more than a bare power to sell; and as no sale was ever made, that the title continued unchanged. It was clearly held, however, that the fee was executed in the trustees. Mr. Sugden, in his Treatise on Powers, 112, remarks on the position contended for in the case of Keene and Deardon, that it was “ a doctrine utterly subversive of all received notions on this branch of the law of real property.” He cites an Irish case to the same effect as Keene and Deardon. A recovery was suffered, and the uses declared to trustees, or the survivor of them, and his heirs, in trust, to sell or mortgage the whole or any part of the estates, for payment of debts, with the consent of the tenant in tail during his life, or without such consent after his death ; to pay the surplus to the tenant in tail, his executors or administrators, subject to such power of altering or mortgaging the estates, or such of them as should remain unsold, to enure to the use of the tenant in tail, his heirs and assigns. It was held that the legal estate vested in the trustees.
It was suggested in the cause, that as the trust was for a married woman and her children, as tenants in common, the estate might remain in the trustee, so far as the share of the feme covert was concerned, and the interests of the children be executed in them. The grounds on which I have decided the cause, make an answer to that suggestion. The whole fee was conveyed to the trustees, and *477 the estate remained in them, at all events during the life of Collas, and there is nothing to divert it afterwards. The power to sell, relates to the whole estate, and to satisfy that, the whole must remain in them. I am of opinion, however, that in no case could there be such a partial execution of a use. The estate is one, and must be executed either in the trustee or the cestuique trust. As observed by Lord Hardwicke, in Gibson vs. Rogers, this court will not make fractions, and consider them as trustees for only part of the inheritance.
An order has been already made on the petition for the substitution of a trustee. It is further ordered and decreed, that upon the complainant, John Gadsden’s, executing to the defendant a sufficient conveyance, in fee simple, of the lot of land in question, the defendant accept such conveyance, and pay to the complainant the purchase money stipulated.
From this decree an appeal was taken to the Court of Appeals, and upon argument the Chancellor’s decree was confirmed.

 Can our Act of 1824, dispensing with words of perpetuity in devises, have any bearing in this State, on the estate which is conveyed to the trustee ? “Every gift of land by devise shall be construed a gift in fee simple.” Must not this law operate on all the devises of legal estates, whether to a trustee or to any other. See 4 M'Cord’s Rep. 442. — The Editors.